# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

BUREAU OF CONSUMER
FINANCIAL PROTECTION,

    Plaintiff,

v.

FORSTER & GARBUS, LLP,

    Defendant.

Civil Action No.  2:19-cv-2928

**COMPLAINT**

Plaintiff, the Bureau of Consumer Financial Protection (Bureau), alleges as follows:

## Introduction

1. The Bureau brings this action against Forster & Garbus, LLP, a debt-collection law firm, to address its practice of filing collection lawsuits against consumers without meaningful attorney involvement.

2. Since at least January 2014, Forster & Garbus has relied on non-attorney support staff, automation, and both a cursory and deficient review of account files to attempt to collect more than 99,000 debts that consumers allegedly owe to Forster & Garbus's clients.

3. Using high-volume litigation tactics, Forster & Garbus collects substantial sums of money from consumers who may not actually owe debts or may not owe debts in the amounts claimed in the collection suits.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5. Venue is proper because Forster & Garbus is located, resides, and transacts business in this district. 12 U.S.C. § 5564(f).

## Parties

6. The Bureau is an agency of the United States charged with regulating the offering and providing of consumer-financial products and services under federal consumer-financial laws, including the Fair Debt Collection Practices Act (FDCPA), 12 U.S.C. § 5491(a), and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a)(1). The Bureau's regulatory authority extends to persons engaged in the collection of debt related to any consumer-financial product or service. 12 U.S.C. §§ 5481(5), (15)(A)(x). The Bureau has independent litigating authority to address violations of federal consumer-financial laws, including the FDCPA and the CFPA. 12 U.S.C. § 5564(a)-(b); 15 U.S.C. § 1692l(b)(6).

7. Forster & Garbus is headquartered and maintains its principal place of business at 60 Motor Parkway, Commack, New York 11725. At all times material to this Complaint, Forster & Garbus has regularly collected or attempted to collect,

directly or indirectly, consumer debts. Forster & Garbus is therefore a "covered person" under the CFPA and a "debt collector" under the FDCPA. 12 U.S.C. §§ 5481(6), (15)(A)(x); 15 U.S.C. § 1692a(6).

## Facts

8. For several decades, Forster & Garbus has collected debts incurred primarily for personal, family, or household purposes. Creditors and debt buyers refer credit-card, auto-loan, student-loan, and home-equity-loan debts, among others, to Forster & Garbus for collection.

9. Between 2014 and 2016, at any given time, Forster & Garbus employed roughly ten or eleven attorneys, in addition to its two named partners.

10. Since January 1, 2014, Forster & Garbus's clients have placed more than 136,700 accounts with the firm for collection.

11. Accounts placed with Forster & Garbus have generally been electronically sent to Forster & Garbus with the data needed to populate Forster & Garbus's templates for communications with consumers, including templates for civil complaints. This data includes the consumer's name, address, and social-security number, the original account number, the date the account was opened, the name of the present creditor, the name of the original creditor, the date of charge-off, the amount of the debt, and the last payment date.

12. Historically, unless a consumer disputes a debt, Forster & Garbus has generally not conducted any inquiry into the facts surrounding an alleged debt or requested supporting documentation, such as account applications, billing statements, payment histories, the terms and conditions governing an account, or consumer correspondence, from its clients to corroborate purported debts before filing suit. In addition, Forster & Garbus does not conduct reviews for contractual disclaimers related to debt sales, even though many of Forster & Garbus's clients are debt buyers.

### Forster & Garbus engages in mass litigation.

13. Despite maintaining a small roster of attorneys, Forster & Garbus files suits in New York courts on a massive scale.

14. In 2014, Forster & Garbus filed collection lawsuits on more than 45,600 consumer accounts; in 2015, it filed collection lawsuits on more than 34,100 consumer accounts; and in 2016, it filed collection lawsuits on more than 20,000 consumer accounts. Forster & Garbus filed more than 99,000 collection lawsuits between 2014 and 2016 (the "Collection Suits").

15. Forster & Garbus's Collection Suits bore the names and signatures of attorneys despite those attorneys not being meaningfully involved in reviewing the merits of the lawsuits, including conducting any inquiry into the facts, or in preparing the pleadings.

**Forster & Garbus relies on non-attorney staff and automated processes to identify accounts for suit and to prepare relevant pleadings.**

16. Forster & Garbus relies on non-attorney staff and automated processes to identify accounts for potential legal action. Upon placement of an account with Forster & Garbus, the firm's software automatically scrubs the file to determine, among other things, whether the relevant consumer has filed for bankruptcy, is in active military status, or is deceased. The software also assesses whether a statute of limitations bars collection.

17. Non-attorney support staff then attempt to collect the debt for Forster & Garbus's clients outside of the legal system.

18. If the non-attorney personnel do not receive a response from a consumer to demands for payment or an account cannot otherwise be resolved, Forster & Garbus's non-attorney personnel will identify the account as "suit-worthy."

19. Accounts deemed "suit-worthy" are then, again, run against bankruptcy, deceased, and military databases.

20. After these scrubs are run, files that are not rejected by one of the scrubs are transferred to one of Forster & Garbus's partners, Mark Garbus, for review.

21. Garbus uses two computer screens to compare a complaint related to a particular account, which Forster & Garbus's software generates by populating a

5

template with data provided by Forster & Garbus's clients upon account placement, against information on the account, such as account balance and venue. Garbus reviews the information available on the account, any staff notes on the account, and, if available, any documents provided by clients upon account placement; historically, however, Forster & Garbus has not received any original or supporting documentation from its clients before filing suit.

22. Garbus generally approves for suit more than 90% of the accounts that are presented to him. In his review, he looks for "obvious" reasons to reject a suit, such as a recent payment on the account or the consumer having filed for bankruptcy.

23. Following Garbus's review and approval, the complaint and summons are printed by the firm's clerical unit and given to an associate attorney for further review and for signature. The associate attorney has the authority to reject the lawsuit.

24. Forster & Garbus's associate attorney conducts the same type of review as Garbus, examining the content included in the physical complaint against account data provided by the relevant client and any notes and available documents. The associate attorney may also review client affidavits to ensure consistency with the data in Forster & Garbus's system. If the associate attorney approves the account for suit, he or she signs the complaint.

25. One former associate attorney with Forster & Garbus received and reviewed finished complaints from Forster & Garbus's back office. If the information in the complaint accurately matched the client-supplied information in the firm's computer system, he would sign the complaint. His review of each complaint only took "a minute or two," and he would allocate roughly two minutes to reviewing a debtor's file before approving and signing a complaint.

26. For the majority of accounts placed by debt buyers and creditors with Forster & Garbus between 2014 and 2016, Forster & Garbus's attorneys signed the complaints that initiated the Collection Suits without reviewing the following types of documentation in any form (electronically or otherwise) related to the purported debts: account applications, billing statements, copies of payments, payment histories, cash-advance check copies, the terms and conditions governing an account, and consumer correspondence.

27. Forster & Garbus's attorneys do not conduct reviews for warranties or disclaimers of warranties related to debt sales, and did not do so between 2014 and 2016. This means that debt buyers represented by Forster & Garbus may buy and seek to collect debts without any warranty that the debts are valid, accurate, or were owned by the seller. More broadly, this practice suggests that Forster & Garbus is generally unfamiliar with (and fails to conduct significant review of) its clients' contracts.

## Forster & Garbus often files suit without investigating or otherwise verifying the facts it alleges.

28. When electronic records are received from a client, Forster & Garbus historically has checked to make sure that the firm has certain pieces of information: (1) the consumer's name, address, and social-security number; (2) name of the present creditor; (3) name of the original creditor; (4) original credit-card-account number; (5) date the account was opened; (6) date of charge off; and (7) account balance—information needed to complete a form complaint. Where supporting documentation has not been provided by one of its clients and a consumer has not requested substantiation of a debt, Forster & Garbus has generally not sought to investigate or otherwise verify information, such as the debt's validity or accuracy, before filing suit. It has not sought payment histories, account applications, billing statements, copies of payments, cash-advance check copies, the terms and conditions governing an account, or consumer correspondence.

29. In 2014, of the 45,621 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 8,958 of those accounts—19.6% of accounts.

30. In 2015, of the 34,103 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 14,965 of those accounts—43.9% of accounts.

31. In 2016, of the 20,006 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 15,113 of those accounts—75.5% of accounts. In 2016, Forster & Garbus began to possess more original or supporting documentation for its accounts before filing suit because clients stopped referring accounts to Forster & Garbus until those clients were able to ensure the firm had sufficient information to permit the firm to sue and obtain judgments under the regulations of the Office of Court Administration.

32. At least one former associate attorney with Forster & Garbus did not know, when he worked at Forster & Garbus, whether the information supplied by the firm's clients was accurate, and he considered the issue outside of his purview. He also did not review any materials other than what he received from the client before signing a complaint. This attorney signed complaints for 41,508 accounts from January 1, 2014 through December 31, 2016.

33. Forster & Garbus files debt-collection lawsuits on behalf of debt buyers, including: (1) many of the National Collegiate Student Loan Trusts; (2) Asset Acceptance, LLC; and (3) Midland Funding, LLC.

34. Asset Acceptance, LLC and Midland Funding, LLC are subsidiaries of Encore Capital Group, Inc. Encore Capital Group, together with Midland Credit Management, Inc. and Asset Acceptance Capital Corp., is one of the nation's largest debt buyers. In September 2015, Midland Funding (as well as Encore

Capital Group, Midland Credit Management, and Asset Acceptance Capital Corp.) stipulated to a Bureau consent order that found that it had attempted to collect debts that it knew, or should have known, were inaccurate or could not legally be enforced based on contractual disclaimers, past practices of debt sellers, or consumer disputes.

35. In September 2017, the Bureau took action against the 15 National Collegiate Student Loan Trusts and their debt collector, Transworld Systems, Inc., alleging that they sued consumers for private student-loan debt that the companies could not prove was owed or was too old to sue over.

36. Despite filing lawsuits on behalf of debt buyers, including debt buyers that have been accused of unlawful debt-collection practices such as alleging that consumers owe amounts that they do not actually owe, Forster & Garbus does not conduct reviews for contractual disclaimers related to debt sales, nor did it request and review supporting documentation for many of the accounts on which it filed suit between January 1, 2014 and December 31, 2016.

37. Forster & Garbus also files lawsuits on behalf of creditors that have been accused of unlawful debt-collection practices, including alleging that consumers owe amounts that they do not actually owe. For example, Forster files lawsuits on behalf of (1) Discover Bank; (2) Citibank, N.A.; and (3) Department Stores National Bank, an affiliate of Citibank, N.A. In July 2015, Discover and

affiliated entities stipulated to a Bureau consent order that found that, among other violations, they had overstated the minimum amount due for certain borrowers by incorrectly including interest on loans that were still in deferment and were not required to be paid. The Bureau also found that Discover acquired a portfolio of defaulted debt from Citibank but failed to comply with the consumer notices required by federal law. Specifically, the Bureau found that the company failed to provide consumers with information about the amount and source of the debt and the consumer's right to contest the debt's validity.

38.     In February 2016, Citibank stipulated to a Bureau consent order that found that Citibank sold credit-card debt with inflated interest rates and failed to forward consumer payments promptly to debt buyers. The same day, Citibank, and other persons, including Department Stores National Bank, also stipulated to a Bureau consent order that found that they had falsified court documents filed in debt-collection cases in New Jersey state courts.

39.     Despite filing lawsuits on behalf of creditors that have been accused of unlawful debt-collection practices, including alleging that consumers owe amounts that they do not actually owe, Forster & Garbus has filed suits against purported debtors on behalf of those creditors without investigating or verifying the summary information that served as the basis for those lawsuits.

40. Forster & Garbus is generally not sufficiently familiar with its clients' contracts and practices to reasonably rely on the limited summary information that its clients provide. For example, as noted above, Forster & Garbus's attorneys do not conduct reviews for warranties or disclaimers of warranties related to debt sales, and they did not do so between 2014 and 2016. This means that debt buyers represented by Forster & Garbus may buy and seek to collect debts without any warranty that the debts are valid, accurate, or were owned by the seller, and Forster & Garbus would not know.

**Forster & Garbus uses a few designated signers.**

41. Since 2014, Forster & Garbus has charged between one and five of its associate attorneys with the task of reviewing and signing the vast majority of complaints initiating the Collection Suits.

42. Forster & Garbus also has those attorneys make court appearances on a regular basis; prepare motions and opposition papers and affidavits in support of those motions and oppositions; conduct discovery; respond to orders to show cause; prepare for trial; engage in settlement negotiations; and review and sign other legal documents related to judgments and collecting on judgments.

43. Forster & Garbus's associate attorneys generally work 40 to 45 hours a week and manage at least 450 to 500 files, although the designated signers may have fewer cases.

44. In 2014, Forster & Garbus filed collection suits on 45,621 accounts. A single associate attorney signed complaints for 41,498 of those accounts, in addition to handling other tasks, including frequent court appearances.

45. In 2015, Forster & Garbus rotated four associate attorneys to serve as the primary signer of complaints at various periods during the year. That year, Forster & Garbus filed suit on 34,103 accounts. One associate attorney signed complaints for 14,586 of those accounts, another associate attorney signed complaints for 12,510 of those accounts, a third associate attorney signed complaints for 5,068 of those accounts, and the fourth associate attorney signed complaints for 1,927 of those accounts, in addition to handling other tasks, including frequent court appearances.

46. In 2016, Forster & Garbus filed collection suits on 20,006 accounts. A single associate attorney signed complaints for 18,173 of those accounts, in addition to handling other tasks, including frequent court appearances.

**Count I**
**Defendant's Violations of the FDCPA**
**(Filing Deceptive Collection Suits)**

47. The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

48. The Collection Suits featured the signatures of attorneys, but they were prepared and filed without meaningful attorney involvement.

49. Forster & Garbus falsely represented to consumers that the Collection Suits were from attorneys when, in fact, attorneys were not meaningfully involved in preparing or filing the suits.

50. Section 807(3) and (10) of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means to collect a debt, including the false representation or implication that any individual is an attorney or that any communication is from an attorney. 15 U.S.C. § 1692e(3), (10).

51. Forster & Garbus's acts and practices violate § 807(3) and 807(10) of the FDCPA, 15 U.S.C. § 1692e(3), (10).

### Count II
### Defendant's Violations of the CFPA
### (Filing Deceptive Collection Suits)

52. The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

53. Section 1036(a)(1)(A) of the CFPA prohibits a covered person from committing any act or omission in violation of a federal consumer-financial law. 12 U.S.C. § 5536(a)(1)(A).

54. Forster & Garbus's FDCPA violations, described above in Count I, therefore constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## Count III
## Defendant's Deceptive Acts and Practices in Violation of the CFPA
### (Filing Deceptive Collection Suits)

55. The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

56. The complaints filed in the Collection Suits represented, directly or indirectly, expressly or by implication, that attorneys were meaningfully involved in preparing and filing the complaints.

57. In fact, the complaints filed in the Collection Suits were prepared and filed without meaningful attorney involvement.

58. Forster & Garbus's material misrepresentations, as set forth above, were likely to mislead consumers acting reasonably under the circumstances.

59. Sections 1031(a) and 1036(a)(1)(B) of the CFPA prohibit a covered person from engaging in any deceptive act or practice. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

60. Forster & Garbus's acts and practices constituted deceptive acts or practices in violation of §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## Demand for Relief

The Bureau requests that the Court:

a. permanently enjoin Forster & Garbus from committing future violations of the FDCPA and CFPA;

b. grant additional injunctive relief as the Court may determine to be just and proper;

c. award damages or other monetary relief against Forster & Garbus;

d. order Forster & Garbus to pay redress or restitution to consumers harmed by its unlawful conduct;

e. order Forster & Garbus to disgorge all ill-gotten gains;

f. impose civil money penalties on Forster & Garbus;

g. award costs against Forster & Garbus; and

h. award additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

KRISTEN A. DONOGHUE
*Enforcement Director*

JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*

OWEN P. MARTIKAN
*Assistant Litigation Deputy*

  /s/Barry Reiferson
BARRY REIFERSON (NY Reg. #4343893)
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: 212-328-7020
Facsimile: 202-435-5477
E-mail: Barry.Reiferson@cfpb.gov